L. H. DELLINGER, *vs.* A. G. TWEED.

A homestead and personal property exemption, under Art. X, of the Constitution and the laws passed in pursuance thereof, cannot be sold under an execution, issued upon a judgment rendered, in an action *ex delicto.*

PEARSON, C. J., and RODMAN, J., *dissentientibus.*

This was a civil action, tried on complaint and demurrer, before His Honor, Judge Cloud, at Fall Term 1870, of the Superior Court of Yancey.

The complaint alleges, in substance, that the plaintiff had recovered judgment in an action for defamation against one, McPeters, in the Superior Court of Yancey county, at Spring Term 1869 ; that he caused execution to issue thereon, and, to be placed into the hands of the defendant, the Sheriff of Madison county, with a notification that the same was issued upon a judgment in a case of slander ; that, notwithstanding, the said Sheriff had summoned appraisers, and caused a homestead to be laid off to McPeters, and returned that fact and *nihil ultra ;* that McPeters had property amply sufficient to satisfy said execution, which the Sheriff neglects and refuses to sell—and then demands judgment, &c.   To this complaint a demurrer was interposed, general in character, special in form. His Honor, on consideration, rendered judgment in favor of

the defendant, and, the plaintiff appealed. The appeal was argued at January Term 1871, by

*Battle & Sons* and *Malone*, for the plaintiff.
*Ovide Dupreé* and *Batchelor*, for the defendant.

The Court took an *advisari* until June Term, 1871, when the cause was again argued.

*Malone* for the plaintiff.

I. The homestead exemption is a privilege, and in analogy to the privilege of infancy, coverture and the like cannot be maintained against *tort*.

II. It was held in *Smith* v. *Owens*, 17 *Wis.*, 395, that the word "liability" secures a homestead as against *tort*, as it curtails the meaning of the word "debt."

He also cited *State* v. *Melogue*, 9 *Ind.*, 196.

*Battle & Sons*, for the plaintiff, filed the following brief:

1. In the interpretation of Constitutions we are to presume that words have been employed in their natural and ordinary meaning. *Cooley, C. L.* 58 and 59.

2. The common law to be kept in view. *Ibid*, 60–61.

3. The same word to be understood in the same sense throughout. *Ibid*, 62.

Compare with Art. X, secs. 1 and 2. Art. I, secs. 6 and 16. Art. V, secs. 4 and 5. Art. VII, secs. 7 and 13. Art. VIII, sec. 4.

4. The word *debt* in the Constitution understood by the General Assembly, which put the instrument into operation, in the restricted sense. Compare with sec. 16, Art. I, of the Constitution, sec. 149, Code Civil Procedure. Compare also, secs. 1 and 26, chap. 59, Revised Code. Words *Debt* and *Damages*

used.  Also, chap. 45, secs. 7 and 8 ; also chap 61, sec. 3, and chaps. 63and 64, Acts of 1866–'67, and Acts of 1858–'69, chap. 38.

5. Definition of *Debt*, in Blackstone, is in Book 3, p. 154, *specific and restricted*, in Book 2, p. 464.

6. The purpose of the Homestead exemption was to afford relief to the people of the State, then heavily in debt.  The Legislature had been attempting to do the same thing, but was met, by Constitutional difficulties.  See acts of 1866–'67, above, above and the several stay-laws.

Cooley, 65.

*W. H. Bailey*, having a similar case, appeared by courtesy, on the same side :

I. If homesteads are exempt from execution in actions *ex delicto*, the words, "issued for the collection of any debt," have *no value*.  Lopp them off and the words left cover any execution, beyond all doubt.  When added, therefore, it could not be to explain but to qualify.

II. In statutes, words are to be taken in their ordinary sense, and that sense had been well established by distinctions in General Orders, Stay-Laws, &c.

III. The history of the passage of Art. X : As first drafted it read, after the words as they now are, " *contracted* after the adoption of this Constitution."  *Con. Jour.*, 278 : On 2nd reading, delegate Graham, of Orange, proposed an amendment, i. e., " that the General Assembly shall provide by law for the exemption, from sale, *under execution*, or other process, of a homestead," rejected, 33 to 61.  See *Jour.*, 283 : On 3d reading, Mr. G. proposed to strike out the words, " issued for the collection of any debt," which was rejected—p. 347-

IV. The Art. X, &c., are, *in pari materia*, and, to a great extent, follow the language and provisions, of the former homestead laws, 1858–'59 and 1866–'67, with this noticeable difference, viz : the Act of '58, provided that the homestead should

not be subject to execution, " for any debt contracted, or, *cause of action,* arising, after the same is registered;" the Act of '67, enacts, " shall not be subject to execution, for any debt, contracted, or cause of action, or, other liability," &c., *General Order No.* 10, makes the exception universal. Yet with this previous legislation, the Convention restricted the exemption "issued for the collection of any debt contracted after,"— a tort contracted ! Used inadvertently ? The word " debt " was called to their attention four times, pp. 280, 283, 349.

V. The Acts of 1868 and 1868–'69, follow in the rut cut by the Convention, and are legislative contemporaneous constructions. *Hedgecock v. Davis,* 64, N. C., and in these acts the words " creditor " and " debtor " repeatedly occur.

VI. Analogies—construction of statutes to the effect that *tort* is not embraced by the term *debt.* Insolvent debtors act, *Woolard v. Dean,* 2 *D. and B,* 490 : Attachment law (R. S.) *Minga v. Zollicoffer,* 1 *Ired.,* 178 : Removal of debtors, *Booe v. Wilson,* 1 *Jones,* 182 : 13th Eliz., *Worth v. Norcom,* 4 *Ired.,* 202 : Justices jurisdiction, *State v. Alexander,* 4 *Hawks,* 182 : *Clarke v. Dupree,* 2 *Dev.,* 411. Bankrupt's estate. It cannot be proved—this is familiar learning.

VII. Contemporaneous legislation favorable to punishment of *torts.* Stay-laws did not embrace them. Slight trespasses were made indictable.

VIII. Decisions, in other States, on similar enactments: *Lathrop v. Singer,* 39, *Barb.* (*N. Y.*) 396 : *State v. Meloque,* 9, *Ind.,* 196 : *Davis v. Henson,* 29, *Ga.,* 345 : 1, *Wash· R. P.,* 353.

*Batchelor and Dupreé* for the defendant.

The Court took another *advisari,* when, at the present term, the following opinions were delivered.

14

READE, J. Hitherto, the only objection to homestead exemption has been, not that it violates the Constitution of the State—for it is in that instrument it is provided for—nor yet, that it violates public policy—for it is in universal favor —but, the objection has been, that it was in violation of the Constitution of the United States, which forbids a State to pass a law which impairs the obligation of contracts.

This case steers clear of that objection, for here was no contract at all, but a *tort*. This case, therefore, involves nothing but a construction of our State Constitution, the rule in regard to which is, that we must seek for its meaning, by the consideration of its language, and its common acceptation, making sense.

If the object of the Constitution was to defeat creditors, it was a wicked purpose, and in conflict with the Constitution of the United States. If the purpose was to secure homesteads, then it was a commendable purpose, and quite within the power of the State. It is but common respect to the intelligence and virtue of the people, as assembled in Convention, to suppose that they intended to do the latter. The article upon the subject in the Constitution, is entitled "Homesteads and Exemptions;" and secures a homestead to every man who has one, and to his family without regard to his indebtedness. The object being, to establish homesteads, as institutions in the family economy, and in the interest of society. And if debts stand in the way, they must "go by the board," as anything else must, not by design, but incidentally. And yet ,it is amazingly common, to hear it discussed, whether it was *intended* to defeat this or that debt; whereas, it was intended to *defeat* nothing, but to secure a homestead. And, therefore, if a debt come in the way—that must give way ; and if damages for torts come in the way—they must give way.

Against this view, it is objected that the words used are, " any debt,". and that debt is necessarily founded on a contract. And, therefore, while the homestead cannot be sold under ex-

ccution at all, yet, it may be sold under an execution obtained on a tort, or on damages.

To this it is answered, that if the language of the Constitution, is to be understood in the *technical* sense of the term used, then there is no homestead exemption at all; for it was never known that an execution issued, or was obtained upon a debt, or upon a contract, or upon a tort, or upon damages. An execution, in all cases, issues or is obtained upon a *judgment*. So that, instead of reading the Constitution as it is, "shall be exempted from sale under execution, or other final process, obtained any debt," we must read it as it must necessarily mean, to make sense, "shall be exempted from sale under execution obtained on an*y judgment*," or else we must hold a judgment to mean a debt, as clearly it does. And then, the manifest intention will be carried out, that the homestead shall not be sold under execution at all, except in the cases named in the Constitution. But then, it is asked, if the Constitution means *judgment* instead of *debt*, why did it not say so? It may just as well be asked, if it meant contract, why did it not say so? It does say plainly enough, and expressly that it shall not be sold under execution, and that was the main idea to which the Convention was advertent; and it was inadvertent in describing upon what the execution was to issue, as well it might be, because an execution cannot issue except upon a *judgment*.

We admit, that a plausible argument against this view, is founded, upon the impolicy of allowing a man to commit torts, with impunity. But we think, a still more plausible argument might be founded upon the impolicy of allowing a man, to avoid debts, with impunity. But the Constitution does neither. It, has nothing to do with allowing men to commit torts, or to avoid debts. It, looks away from these, not as favoring them, but to the paramount object, of establishing homesteads.

Our attention has been called to decisions, in two or three

sister States, where the homestead has been sustained, as against torts, and we know of no decision to the contrary.

No ERROR.                                        Affirmed.

PEARSON, C. J. *dissentiente.* The ruling, in *Hill* v. *Kesler*, that the words "any debt," as used in the Constitution, embrace pre-existing debts, as well as debts contracted after the adoption of the Constitution, certainly gives to the words their fullest extension. As to debts contracted afterwards, there was no difficulty, for a man in giving credit could have an eye to the existing state of things. As to pre-existing debts, there was very great difficulty. On the one hand, the prohibition of the Constitution of the United States, as to impairing the obligation of contracts—on the other, the necessity for relief, to a people who, by the loss of their slave property, and other consequences of the late disastrous war, were unable to pay their debts, without being deprived of the means of subsistence. Upon this latter view of the question, there has been a very general acquiescence, on the part of the profession and of the people, in the decision made, by a majority of the Court. Certainly there has been no desire on the part of the Courts of the State, to disturb *Hill* v. *Kesler*. After these "two little words" had been allowed to have so large an effect, taking them in one sense, the attempt to press them again into service, for a different field of action, and, in a sense entirely different, so as to make them embrace damages for *tort*, and injuries caused by misfeasance, does not, as it seems to me, come with a very good grace. The ground of "a necessity for relief," which was the main consideration in *Hill* v. *Kesler*, has no application and there is no context or subjunctive words which can have the effect to extend the naked meaning of the word "debt"— for instance, in the Constitution of the State of Ohio, after the words "any debt," the words or *"other liabilities"* are super-added. Upon these latter words, the Court puts its construction, that the homestead is exempted from sale for damages

L. H. DELLINGER *v.* A. G. TWEED.

assessed in actions for *tort.* There are no words to that effect, in the Constitution of the State of North Carolina, and the construction turns wholly upon the words "any debt," unaided by considerations of necessity, or any collateral matter.

The ordinary meaning of the word "debt," is, a sum of money due to another by contract. The relation of debtor and creditor implies, as of course, that the one has given credit to, that is, trusted the other, in a contract.

It is true, the word debt is sometimes used in a broader sense. One pays a debt to nature when he dies ; he pays a debt to justice when he is hung for murder ; he pays a debt to the State, when fined for a misdemeanor ; he pays a debt to the party injured by slander or other private wrong, when he satisfies the damages assessed by the jury.

I cannot bring my judgment, to the conclusion, that the word is used by the Constitution in this broad and figurative sense. To give it that construction, will carry the remedy beyond the mischief, and, instead of providing home and the means of subsistence for unfortunate debtors, by putting a certain amount of property beyond the reach of creditors, to meet a pressing necessity growing out of the consequences of the war, the effect of the construction will be, to grant impunity to wilful wrongs and injuries to private rights, without any special necessity caused by the war, and thus make a most important change of the law, in respect to the rights of person and rights of property, merely for the sake, of making a change. If, such was the purpose, every principle of construction, called for the use, of plain and unequivocal words to express the intention.

There is another view of the subject entitled to much weight. This change in the law, will in nine cases out of ten, take from the party injured all civil remedy for redress ; he is not obliged to trust any one hereafter, so as to become his creditor by contract, unless he may choose to do so, but, how can a man prevent another from uttering slander or seducing a daughter, or

from instituting a malicious prosecution, if he has no mode of recovering damages? The only way, to protect our good citizens from such injuries, would be, to provide a public remedy in the stead of the private remedy, by making all such injuries, indictable as misdemeanors. In the absence of such a provision, the conclusion is forced upon me, that the Constitution did not mean to make so important a change, by which, every one is put at the mercy of the vicious and ill-disposed, and will be driven in the absence of all protection, either by indictment or by civil action which can be made effectual, to take the law, into his own hands.

RODMAN, JUSTICE, *concurs.*